UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 21-cv-62542-BLOOM/Valle**

TEQUILA WATERS,
*as personal representative of
the estate of Damian Martin
and Tequila Waters individually*,

       Plaintiff,

v.

CITY OF SUNRISE,
*a municipality of the State of Florida*,
ERIC PLUNSKE, *individually*, *and*
TERRANCE WALKER, *individually*,

       Defendants.
_____/

## ORDER ON CITY OF SUNRISE'S MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant City of Sunrise's ("Defendant") Motion to Dismiss Plaintiff's First Amended Complaint, ECF No. [8] ("Motion"). Plaintiff Tequila Waters ("Plaintiff") filed a Response in Opposition, ECF No. [21] ("Response"), to which Defendant filed a Reply, ECF No. [22] ("Reply"). The Court has carefully reviewed the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted in part and denied in part consistent with this Order.

## I.    BACKGROUND

On March 8, 2021, Plaintiff Tequila Waters, individually and as personal representative of the Estate of Damian Martin ("Decedent"), filed her Complaint in the Circuit Court of the 17th Judicial Circuit, in and for Broward County, Florida. *See* ECF [1-3] at 56-60. Defendant City of Sunrise filed its first Motion to Dismiss, *see id.* at 28-36, which the State Court granted, dismissing

the Complaint with leave to amend, *see id.* at 6. On November 26, 2021, Plaintiff filed her First Amended Complaint. ECF No. [1-2] ("Amended Complaint"). In the Amended Complaint, Plaintiff asserts three counts against Defendant: violation of Fourth Amendment federal civil rights resulting from deliberate indifference (Count I); violation of Fourteenth Amendment federal civil rights resulting from excessive force (Count II); and negligence for the wrongful death of Damian Martin (Count III). *See generally id*.

Defendant subsequently removed the case to this Court, *see* ECF No. [1], and filed the instant Motion to Dismiss Plaintiff's First Amended Complaint, *see* ECF No. [8]. In the Motion, Defendant contends that Plaintiff lacks standing to bring a claim on behalf of Decedent. Defendant also argues that Plaintiff fails to state a claim for relief because there is no viable deliberate indifference claim under the Fourth Amendment, no viable excessive force claim under the Fourteenth Amendment, and no custom or policy for § 1983 liability pursuant to *Monell*. Defendant further submits that Plaintiff fails to allege a viable negligence claim and that it is entitled to sovereign immunity. Plaintiff responds that she has standing to sue on behalf of Decedent, the Amended Complaint alleges customary practices that led to Decedent's death, and Defendant is not entitled to qualified immunity.

## II.   LEGAL STANDARD

### A.  Standing

One element of the case-or-controversy requirement under Article III of the United States Constitution is that plaintiffs "must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). It is a threshold question of "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Sims v. Fla. Dep't of Highway Safety & Motor Vehicles*, 862 F.2d 1449, 1458 (11th Cir. 1989) (*en banc*). "'The law of Article III

standing . . . serves to prevent the judicial process from being used to usurp the powers of the political branches,' and confines the federal courts to a properly judicial role." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013); *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Further, "standing requirements 'are not mere pleading requirements but rather [are] an indispensable part of the plaintiff's case.'" *Church v. City of Huntsville*, 30 F.3d 1332, 1336 (11th Cir. 1994) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). "Indeed, standing is a threshold question that must be explored at the outset of any case." *Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225, 1232 (11th Cir. 2019) (citing *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005)), *cert. denied*, 140 S. Ct. 900 (2020). "In its absence, 'a court is not free to opine in an advisory capacity about the merits of a plaintiff's claim.'" *Id.* (quoting *Bochese*, 405 F.3d at 974). "In fact, standing is 'perhaps the most important jurisdictional' requirement, and without it, [federal courts] have no power to judge the merits." *Id.* (footnote omitted) (quoting *Bochese*, 405 F.3d at 974).

> [A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision."

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 472 (1982) (quoting *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 99 (1979)). In other words, to establish standing, a plaintiff must allege that: (1) it "suffered an injury in fact that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" (2) "the injury is fairly traceable to conduct of the defendant;" and (3) "it is likely, not just merely speculative, that the injury will be redressed by a favorable decision." *Kelly v. Harris*, 331 F.3d 817, 819-20 (11th Cir. 2003).

"The party invoking federal jurisdiction bears the burden of proving standing." *Fla. Pub. Int. Rsch. Grp. Citizen Lobby, Inc. v. E.P.A.*, 386 F.3d 1070, 1083 (11th Cir. 2004) (quoting *Bischoff v. Osceola Cnty.*, 222 F.3d 874, 878 (11th Cir. 2000)). "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991). "If at any point in the litigation the plaintiff ceases to meet all three requirements for constitutional standing, the case no longer presents a live case or controversy, and the federal court must dismiss the case for lack of subject matter jurisdiction." *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011) (citing *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1277 (11th Cir. 2006) ("*CAMP*"))). "In assessing the propriety of a motion for dismissal under Fed. R. Civ. P. 12(b)(1), a district court is not limited to an inquiry into undisputed facts; it may hear conflicting evidence and decide for itself the factual issues that determine jurisdiction." *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991). "When a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1) the district court is free to independently weigh facts, and 'may proceed as it never could under Rule 12(b)(6) or Fed. R. Civ. P. 56.'" *Turcios v. Delicias Hispanas Corp.*, 275 F. App'x 879, 880 (11th Cir. 2008) (quoting *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003)).

### B.  Failure to State a Claim

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929, (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173

L.Ed.2d 868 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Additionally, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. If the allegations satisfy the elements of the claims asserted, a defendant's motion to dismiss must be denied. *Id.* at 556.

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true."); *Iqbal*, 556 U.S. at 678. A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)). While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. "Dismissal pursuant to Rule 12(b)(6) is not appropriate 'unless it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief.'" *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (quoting

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

## III.   DISCUSSION

### A.   Standing

Defendant first seeks to dismiss Plaintiff's claims on the basis that Plaintiff has not been

appointed as Decedent's personal representative. *See* ECF No. [8] at 2-3; *see also* Fla. Stat.

§ 768.20 (providing that a wrongful death action "shall be brought by Decedent's personal

representative"). Plaintiff responds that she "has been issued letters of administration from the

Circuit Court and is the Personal Representative of the Estate of Damian Martin." ECF No. [21]

at 4; *see also* ECF No. [21-1] (attaching the letters of administration). Defendant replies that the

letters were issued on January 5, 2022, which was fifteen (15) days after Plaintiff filed the

Amended Complaint and over three hundred (300) days after Plaintiff filed the original Complaint.

*See* ECF No. [22] at 1. Defendant argues that because Plaintiff lacked standing when the lawsuit

was filed, the Amended Complaint should be dismissed. *See id.* at 1-2.

The Court agrees with Plaintiff. While the "failure to plead a plausible factual basis for the

capacity to sue or be sued can serve as the basis for dismissing a complaint[,]" the Eleventh Circuit

has instructed that when the "appointment as a personal representative is a virtual certainty . . .

courts should stay proceedings rather than dismiss them." *Gubanova v. The Blackstone Grp. L.P.*,

No. 12-22319-CIV, 2013 WL 12064500, at *2, *5 (S.D. Fla. Feb. 25, 2013) (citing *Glickstein v.*

*Sun Bank/Miami, N.A.*, 922 F.2d 666, 671 (11th Cir. 1991), *abrogated on other grounds by Saxton*

*v. ACF Indus., Inc.*, 254 F.3d 959 (11th Cir. 2001)).

In this case, based on Plaintiff's letters of administration, the contents of which Defendant does not dispute, Plaintiff has adequately established that she is the personal representative for Decedent's estate and has standing to sue. *See Gubanova*, 2013 WL 12064500, at *5; *Glickstein*, 922 F.2d at 671. Therefore, pursuant to Eleventh Circuit precedent, dismissal of Plaintiff's claims under these circumstances is not appropriate.[1] As such, the Court proceeds to address the merits of Defendant's remaining arguments.

### B. Failure to State a Claim

#### i. Count I

In Count I, Plaintiff asserts against Defendant "a violation of 4th Amendment federal civil rights resulting from deliberate indifference." ECF No. [1-2] ¶¶ 32-35. Defendant argues that the Amended Complaint fails to state a claim because (1) a "deliberate indifference" claim arises from the Fourteenth Amendment, rather than the Fourth Amendment; (2) a "deliberate indifference" claim requires a custodial arrest; (3) pursuant to *Monell v. Dep't of Social Services, etc.*, 436 U.S. 658, 691 (1978), Defendant cannot be liable where there is no policy or custom that caused Decedent's death; and (4) Defendant is entitled to sovereign immunity. *See* ECF No. [8] at 3-8; 10-12.

Plaintiff responds that the use of physical force to the body of a person with intent to restrain is a seizure that constitutes a custodial arrest. *See* ECF No. [21] at 4-5 (citing *Torres v.*

---

[1] Further, a stay to confirm Plaintiff's appointment is unnecessary given the attached letters. In addition, Defendant's reliance on *Davis v. Fed Election Comm'm*, 554 U.S. 724, 734 (2008), and the dissenting opinion in *Reshard v. Britt*, 839 F.2d 1499, 1501 (11th Cir. 1988), is unavailing. *See* ECF No. [22] at 1-2. *Davis* did not concern the issue of whether a plaintiff's belated appointment as the personal representative of a decedent's estate required dismissal of the plaintiff's claims based on a lack of standing. 554 U.S. at 734. Rather, *Davis* stands for the general requirement that a plaintiff must demonstrate standing for each claim it seeks to press. *See id.* The case offers no specific guidance for the factual circumstances of this case. Defendant's reliance on the dissenting opinion in *Reshard* is also unavailing because the issue before the Eleventh Circuit was whether personal representatives of an estate could proceed *pro se.* 839 F.2d at 1501. *Reshard* did not address the issue of whether a belated appointment required dismissal. *See id.*

*Madrid*, 141 S. Ct. 989, 993 (2021)). According to Plaintiff, the deployment of tasers, one of which allegedly struck Decedent, was a use of physical force on Decedent's body that established Decedent's custodial arrest. *See id.* In addition, Plaintiff argues that allegations about Defendant's customary practices of granting broad discretion to its officers, offering insufficient training for water rescue, and implementing hiring standards that precipitated in the drowning of suspects in custody and the deployment of tasers near waterways satisfy the standard set forth in *Monell*. *See* ECF No. [21] at 7-8. Plaintiff further argues that qualified immunity has no application to this case, but does not otherwise address Defendant's argument about sovereign immunity. *See id.* at 5-7. Defendant replies that there is no evidence that the taser struck Decedent and attaches an autopsy report indicating that the taser did not strike Decedent. *See* ECF No. [22] at 2; *see also* ECF No. [8] at 10 n.1. As such, Defendant submits that Decedent was never in custody. Defendant also argues that the Amended Complaint fails to allege any facts regarding Defendant's notice of similar prior civil rights violations arising from Defendant's customs or policies to sustain Plaintiff's claim. *See id.* at 3-4.

### a. Fourteenth Amendment

The Court agrees with Defendant to the extent that Defendant argues that a deliberate indifference claim arises from the Fourteenth Amendment, rather than the Fourth Amendment. In *Waldron v. Spicher*, the Eleventh Circuit stated that "[n]o case in the Supreme Court, or in this Circuit, or in the Florida Supreme Court has held that recklessness or deliberate indifference is a sufficient level of culpability to state a claim of violation of substantive due process rights in a non-custodial context." 954 F.3d 1297, 1310 (11th Cir. 2020). Therefore, the only viable claim of deliberate indifference must come from a custodial context. Further, the Eleventh Circuit has held that deliberate indifference claims brought by arrestees and pretrial detainees are governed by the

Fourteenth Amendment's Due Process Clause. *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause . . . .").[2] Because a deliberate indifference claim must arise from a custodial context and claims involving the mistreatment of arrestees and pretrial detainees are governed by the Fourteenth Amendment, Plaintiff's deliberate indifference claim premised on the Fourth Amendment fails.

However, in the interest of judicial economy and in fairness to Plaintiff, the Court proceeds to analyze why Plaintiff's deliberate indifference claim would fail even if she brought her claim under the Fourteenth Amendment. If Plaintiff brought her claim under the Fourteenth Amendment, the material issue would have been whether Decedent was under custodial arrest. *See Waldron*, 954 F.3d at 1310. The Supreme Court defines seizure or custodial arrest as follows:

> The word "seizure" readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful. ("She seized the purse-snatcher, but he broke out of her grasp.") It does not remotely apply, however, to the prospect of a policeman yelling "Stop, in the name of the law!" at a fleeing form that continues to flee. That is no seizure. . . . An arrest requires *either* physical force (as described above) *or,* where that is absent, *submission* to the assertion of authority.

*California v. Hodari D.*, 499 U.S. 621, 626 (1991) (emphasis in original). In this case, there are no allegations that Decedent submitted to the officers' assertion of authority. Therefore, the Court must examine whether there was a use of force on Decedent's body. In *Torres v. Madrid*, the Supreme Court held that "[t]he analysis does not change because the officers used force from a distance to restrain [the arrestee]. The required corporal seising or touching the defendant's body, can be as readily accomplished by a bullet as by the end of a finger." 141 S. Ct. 989, 991 (2021)

---

[2] However, as noted below, unlike deliberate indifference claims, excessive force claims brought by arrestees are governed by the Fourth Amendment rather than the Fourteenth Amendment. *See Crocker v. Beatty*, 995 F.3d 1232, 1246 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 845 (2022).

(citation and internal quotation marks omitted).[3] The Amended Complaint alleges that "Officer Walker deployed a taser on Damian Martin" and that "[t]he deployment of the taser was an attempt by the officers to restrain and seize the Plaintiff [*sic*] Damian Martin. This application of physical force to the Plaintiff's [*sic*] person gives rise to a duty pursuant to. [*sic*] *Torres v. Madrid*[.]" ECF No. [1-2] ¶¶ 16, 18. Although Defendant disputes that the taser struck Decedent in its Motion and Reply, *see* ECF Nos. [8] at 10 n.1, [22] at 2, at this stage of the proceedings, the Court must presume that all factual allegations in the Amended Complaint are true. As such, the Court determines that Plaintiff sufficiently alleged the use of physical force on the body of Decedent, placing Decedent under custodial arrest and triggering Fourteenth Amendment protections.[4]

### b.  Monell

The Court next considers whether the Amended Complaint alleges a policy or custom that caused Decedent's death. According to Defendant, as a governmental entity, Defendant is liable only "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . ." of which Plaintiff complains. ECF No. [8] at 6 (quoting *Monell*, 436 U.S. at 691; *Mercado v. City of Orlando*, 407 F.3d 1152 (11th Cir. 2005); *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997)). Defendant argues that there is no allegation of a policy that is "longstanding and

---

[3] Defendant argues that *Torres* is inapplicable because the case did not involve a deliberate indifference claim. *See* ECF No. [2] at 2. Defendant, however, does not explain why the difference in the claims makes the Supreme Court's analysis of what constitutes a seizure or an arrest to be inapplicable to this case. *See id.* This Court considers the difference between the claim in *Torres* and the claims in this case to be a distinction without a difference, and the Court looks to *Hodari* and *Torres* for the definition of a custodial arrest to apply in this context.

[4] To the extent that Defendant asks the Court to look to the Broward County Medical Examiner Autopsy Report, which specifically states that "[t]here is no evidence of the taser striking Decedent[,]" ECF No. [22-1] at 6, the Court is not persuaded. While the Court may take judicial notice of public records such as an autopsy report, *see Walker v. Prieto*, 414 F.Supp. 2d 1148, 1154 n.1 (S.D. Fla. 2006), the Court notes that at the pleading stage, the Court must presume that all factual allegations in the Complaint are true. As such, the Court presumes, for the purposes of this Order, that the taser struck Decedent's body in accordance with the factual allegations in the Complaint.

widespread" that caused Decedent's death or similar prior incidents such that Defendant can be deemed to have known of any deficient policy. *See id.* (quoting *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991)). As noted above, Plaintiff argues that allegations about Defendant's customary practices of granting broad discretion to its officers, offering insufficient training for water rescue, and implementing hiring standards that precipitated in the drowning of suspects in custody and the deployment of tasers near waterways satisfy the standard set forth in *Monell*. *See* ECF No. [21] at 7-8. Plaintiff, however, does not address Defendant's argument that the Amended Complaint fails to allege any similar prior incidents to establish that Defendant knew about the deficient practices.

The Court agrees with Defendant. The Eleventh Circuit has stated that to establish a governmental entity's § 1983 liability, the plaintiff must allege facts establishing an unconstitutional practice "so permanent and well settled as to constitute a custom or usage with the force of law." *Brown*, 923 F. 2d at 1481 (citation and internal quotation marks omitted). Further, the allegations must reflect a practice so "longstanding and widespread," that it can be "deemed authorized by the policy-making officials because they must have known about it but failed to stop it." *Id*. In addition, to survive a motion to dismiss a deliberate indifference claim, the plaintiff must adequately plead that the defendant was "subjectively aware of the substantial risk of serious harm in order to have had a sufficiently culpable state of mind." *See Alsobrook v. Alvarado*, 986 F. Supp. 2d 1312, 1320 (S.D. Fla. 2013).

In this case, Plaintiff fails to allege any facts to establish that Defendant was subjectively aware of the substantial risk of serious harm in order to have had a sufficiently culpable state of mind. *See generally* ECF No. [1-2]. The Amended Complaint is devoid of any allegations of similar prior incidents involving Defendant's officers that would have put Defendant on notice

that its customary practices of granting broad discretion to its officers, offering insufficient training for water rescue, and implementing certain hiring practices posed a substantial risk of serious harm. As such, Plaintiff's claim of deliberate indifference against Defendant would have been dismissed even if Plaintiff brought her claim under the Fourteenth Amendment.

### c.   Sovereign Immunity

Though the Court need not continue, for the sake of clarity, the Court addresses Defendant's claim that it is entitled to sovereign immunity. *See* ECF Nos. [8] at 10-12; [22] at 6. It is unclear from the Motion and the Reply whether Defendant is claiming sovereign immunity to dismiss all claims or only Count III. As noted above, Plaintiff argues that qualified immunity has no application to this case, but does not otherwise address Defendant's argument about sovereign immunity. *See* ECF No. [21] at 5-7.

The Court finds instructive the Eleventh Circuit's holding that "[t]he Supreme Court made it absolutely clear in *Howlett v. Rose,* 496 U.S. 356 (1990), that Florida sovereign immunity law could not be invoked to shield a municipal entity from § 1983 liability." *Abusaid v. Hillsborough Cty. Bd. of Cty. Comm'rs*, 405 F.3d 1298, 1314 (11th Cir. 2005). As such, to the extent that Defendant relies on sovereign immunity to dismiss Count I, the Court is not persuaded. Nonetheless, Count I is dismissed because it seeks relief for deliberate indifference under the Fourth Amendment and because it fails to satisfy the requirements of *Monell* as discussed above.

### ii.   Count II

In Count II, Plaintiff asserts against Defendant "a violation of 14th Amendment federal civil rights resulting from excessive force." ECF No. [1-2] ¶¶ 36-40. Defendant argues that an excessive force claim under the Fourteenth Amendment requires the victim to be a pretrial detainee who has received "a 'judicial determination of probable cause as a prerequisite to [the] extended

restraint of [his] liberty following arrest.'" ECF No. [8] at 5 (quoting *Bell v. Wolfish*, 441 U.S. 520, 536 (1979) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975)) (alterations in original)). According to Defendant, there was no judicial determination of probable cause in this case. *See id.* As before, Defendant also argues that Defendant cannot be liable where there is no policy or custom that caused Decedent's death pursuant to *Monell* and that Defendant is entitled to sovereign immunity. *See id.* at 6-8, 10-12. Plaintiff fails to address Defendant's argument with regard to the lack of a probable cause determination, but, as noted above, Plaintiff argues that Defendant's customary practices establish liability under *Monell* and that Defendant is not entitled to qualified immunity. *See* ECF No. [21] at 5-8.

### a.   Fourth Amendment

The Court agrees with Defendant to the extent that Plaintiff fails to state a claim for relief under the Fourteenth Amendment. As Defendant correctly notes, "under the Supreme Court's current framework [for claims of excessive force], the Fourth Amendment covers arrestees, the Eighth Amendment covers prisoners, and the Fourteenth Amendment covers those who exist in the in-between—pretrial detainees." *Crocker v. Beatty*, 995 F.3d 1232, 1246 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 845 (2022) (citing *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 952 (11th Cir. 2019)) (internal quotation marks omitted). Further, as Defendant correctly notes, "[t]he Supreme Court long ago described a pretrial detainee as a person who had received a judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest." *Id.* (alterations in original; citations and internal quotation marks omitted). In this case, Plaintiff fails to allege that there has been a judicial determination of probable cause that would make Decedent a pretrial detainee. As such, the Fourteenth Amendment does not extend any protection against

excessive force for Decedent, and Plaintiff's excessive force claim premised on the Fourteenth Amendment fails.

Nonetheless, as before, in the interest of judicial efficiency and in fairness to Plaintiff, the Court proceeds to address why Plaintiff's claim of excessive force would fail even she brought her claim under the Fourth Amendment, which applies to excessive force claims brought by arrestees. As discussed above, according to the allegations in the Amended Complaint, Decedent was an arrestee because the taser prong struck Decedent's body. Therefore, Fourth Amendment protections against excessive force apply. *See Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002) ("The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest."). However, "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). In order to allege a claim of excessive force under the Fourth Amendment, a plaintiff must allege that the officer used unreasonable force, which turns on a number of factors. In *Sebastian v. Ortiz*, the court, in addressing a motion to dismiss, stated that allegations of excessive force turned on "the severity of the crime, whether the suspect pose[d] an immediate threat, and whether the suspect [was] resisting or fleeing." No. 16-20501-CIV, 2017 WL 4382010, at *7 (S.D. Fla. Sept. 29, 2017), *aff'd*, 918 F.3d 1301 (11th Cir. 2019) (quoting *Gold v. City of Miami*, 121 F.3d 1442, 1446 (11th Cir. 1997)).

Although the Amended Complaint alleges that Decedent was fleeing, the Amended Complaint does not allege the criminal activity Decedent engaged in, if any, and whether Decedent was armed or otherwise posed a threat to the officers. Instead, Plaintiff alleges in a conclusory

manner that the "discharge of a firearm exceeded the degree of force which a reasonable [*sic*] prudent properly trained law enforcement officer would have applied under the same circumstances." ECF No. [1-2] ¶ 39. As stated above, while courts are required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. An allegation of the deployment of two tasers, only one of which allegedly struck Decedent, constitutes the use of excessive force is a legal conclusion couched as a factual allegation. Therefore, because the Amended Complaint alleges Defendant's officers' use of excessive force in a conclusory manner without further factual enhancement, Count II must be dismissed even if the claim was brought under the Fourth Amendment.

### b. *Monell*

Although the Court need not continue, the Court turns to Defendant's argument that *Monell* also requires the dismissal of Plaintiff's excessive force claim. *See* ECF No. [8] at 6-8. As the Court noted above, Defendant can only be liable under § 1983 "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . ." of which Plaintiff complains. *Monell*, 436 U.S. at 691. Further, the allegations must reflect a practice so "longstanding and widespread," that it can be "deemed authorized by the policy-making officials because they must have known about it but failed to stop it." *Brown*, 923 F. 2d at 1481 (11th Cir. 1991). As before, Plaintiff fails to allege any facts or prior incidents to establish that Defendant was subjectively aware of constitutionally deficient policies and failed to stop the policies. *See generally* ECF No. [1-2]. This, too, defeats

Plaintiff's claim of excessive force against Defendant even if she brought her claim under the Fourth Amendment.[5]

### iii.    Count III

In Count III, Plaintiff asserts a negligence claim against Defendant. *See* ECF No. [1-2] ¶¶ 41-44.[6] Defendant maintains that Decedent was never in custody and argues that a governmental entity cannot be held liable for an allegedly negligent failure to arrest a person who subsequently injured himself. *See* ECF No. [8] at 8-10. According to Defendant, a "special duty" for a negligence claim arises only when "law enforcement officers become directly involved in circumstances which place people within a zone of risk by creating or permitting dangers to exist, by taking persons into police custody, detaining them, or otherwise subjecting them to danger." *Id*. at 9. Defendant posits that no such special duty existed here. Defendant lastly maintains that Defendant is entitled to sovereign immunity. *See id.* at 10-12.

Plaintiff responds that her negligence claim is predicated on Defendant's officers' failure to render aid to Decedent as he was drowning despite being trained in water rescue and their decision to deploy a taser near a body of water. *See* ECF No. [21] at 4-5. Plaintiff also raises arguments related to qualified immunity, which are inapplicable here. *See id.* at 5-7. In its Reply, Defendant maintains that Defendant's officers did not arrest or detain Decedent, and Defendant did not owe Decedent a special duty of care. *See* ECF No. [22] at 4-5. Defendant further submits

---

[5] As stated before, sovereign immunity does not defeat Plaintiff's claim that Defendant violated Plaintiff's federal civil rights. *See Abusaid v. Hillsborough Cty. Bd. of Cty. Comm'rs*, 405 F.3d 1298, 1314 (11th Cir. 2005). Therefore, to the extent that Defendant relies on sovereign immunity to argue for the dismissal of Count II, the argument is unavailing.

[6] The Court chooses to exercise supplemental jurisdiction over Plaintiff's state law claim due to concerns of comity, judicial economy, convenience, and fairness, even though all of the federal claims over which the Court has original jurisdiction have been dismissed. *See Crosby v. Paulk,* 187 F.3d 1339, 1352 (11th Cir. 1999) (quoting *Roche v. John Hancock Mut. Life Ins. Co.,* 81 F.3d 249, 257 (1st Cir. 1996)). As stated below, the Court dismisses the federal claims without prejudice and with leave to amend, thus favoring the exercise of supplemental jurisdiction to address Plaintiff's remaining state law claim.

that Plaintiff's argument that Defendant's officers deployed a taser near a body of water does not

establish a duty of care and that Defendant created his own zone of danger by jumping into a canal.

*See id.* at 5.

### a.   Negligence

The Court finds it necessary to first outline the applicable law. First, there is no common

law duty to rescue a stranger. *See Est. of Ferguson v. Mascara*, No. 09-14192-CIV, 2010 WL

11558195, at *2 (S.D. Fla. Sept. 7, 2010), *on reconsideration*, No. 09-14192-CIV, 2011 WL

13225161 (S.D. Fla. Jan. 19, 2011) (citing *Bradberry v. Pinellas County*, 789 F.2d 1513, 1516

(11th Cir. 1986)). Further, "[t]here is no general duty to rescue a stranger in distress . . . . And the

fact that the defendant is a public officer adds nothing. A mere failure to rescue is not tortious just

because the defendant is a public officer whose official duties include aiding people in distress."

*Hamilton v. Cannon*, 80 F.3d 1525, 1529 n.4 (11th Cir. 1996) (citations and internal quotation

marks omitted). There are exceptions to this rule, where the individual needing rescue is in custody

or where the state created the dangerous situation. *See Est. of Ferguson*, 2010 WL 11558195, at

*3 (citing *Willis v. Charter Township of Emmett*, 360 F. App'x. 596, 599 (6th Cir. 2010)). "Under

the custody exception, if the state has restrained the ability of an individual to act on his own

behalf, then the state would have a corresponding duty to assume responsibility for that

individual's well being. Under the state created danger exception, if the state placed the individual

in danger, in a manner that shocks the conscience then the duty to rescue might be triggered." *Id.*

(citation and internal quotation marks omitted).

In this case, there was no general duty to rescue Decedent. The fact that Defendant's

officers are public officers does not change the analysis, and the fact that the officers' duties

include helping people in distress is inapposite. *See Hamilton*, 80 F.3d at 1529 n.4. However, as

discussed above, Decedent was in custody, and the officers had a corresponding duty to assume responsibility for Decedent's well-being under the custody exception. *See Est. of Ferguson*, 2010 WL 11558195, at *3. Further, although Defendant relies on *Seguine v. City of Miami*, 627 So.2d 14 (Fla. 3d DCA 1993), that case is inapposite as the decedent in that case was never in custody. In *Seguine*, when the officers drew their guns and ordered the decedent to stop in an effort to arrest him, the decedent dove into an adjacent canal and subsequently drowned. *See id.* at 15-16. There was no allegation that the officers applied any physical force to place the decedent in custody. *See id.* Unlike *Seguine*, because Defendant's officers allegedly used physical force to place Decedent in custody, the officers had a corresponding duty to assume responsibility for Decedent's well-being.[7]

### b.  Sovereign Immunity

Having established Defendant's duty, the material question is whether the doctrine of sovereign immunity applies. Unlike § 1983 claims, state law negligence claims are subject to the doctrine of sovereign immunity to a limited extent. *See* Fla. Stat. § 768.28; *Com. Carrier Corp. v. Indian River Cnty.*, 371 So. 2d 1010, 1020 (Fla. 1979). Under Florida law, for sovereign immunity to apply, the challenged conduct must involve an exercise of executive or legislative power such that a court's intervention would inappropriately entangle the court in fundamental questions of policy and planning. *Beach Cmty. Bank v. City of Freeport, Fla.*, 150 So. 3d 1111, 1114 (Fla. 2014). In the context of custodial arrests, the Eleventh Circuit has stated, in relevant part:

> Under Florida law, when an officer has made an initial discretionary decision to conduct a stop and then proceeds to carry out that decision, the officer is no longer exercising a "discretionary" function, but is engaged in an "operational" task. In this case, the officers, having decided to stop [the decedent], had an obligation to proceed with reasonable care.

---

[7] The Court need not consider state created danger exception since the custody exception applies.

*Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1265 (11th Cir. 2001). The Eleventh Circuit further distinguished negligent training and supervision claims, which are based on discretionary decisions, and claims of negligent failure to care for the well-being of arrestees, which are operational decisions. *See id.* at 1265 (holding that the negligent training claim involved "discretionary governmental functions immune from tort liability").

In this case, the Amended Complaint properly alleges that the officers failed to exercise reasonable care once it engaged in the operational task of arresting Decedent. *See* ECF No. [1-2] ¶ 44. However, to the extent that Plaintiff bases her negligence claim on a failure to train, supervise, and instruct its officers, *see id.* ¶¶ 44.I, 44.J, the Court determines that those acts were discretionary decisions subject to sovereign immunity. *See Lewis*, 260 F.3d at 1265. Given that the Amended Complaint sets forth Count III with allegations of both negligent failure to exercise reasonable care and also negligent failure to train, supervise, and instruct, Count III fails to provide Defendant adequate notice of the exact claim against Defendant and the grounds upon which the claim rests. As such, the Court must dismiss Count III.[8]

---

[8] Defendant relies on two Florida Supreme Court cases. *See* ECF No. [8] at 11-12. In *Carter v. City of Stuart*, 468 So. 2d 955, 957 (Fla. 1985), the Florida Supreme Court held that the decision made by a city employee on whether to enforce an animal control ordinance was discretionary in nature and, therefore, protected by sovereign immunity. In *City of Daytona Beach v. Palmer*, 469 So. 2d 121, 122 (Fla. 1985), the Florida Supreme Court similarly held that fire-fighting decisions made by firefighters were discretionary decisions that were protected by sovereign immunity. However, those two cases are distinguishable from the instant case in light of *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1265 (11th Cir. 2001). *Carter* only pertained to the decision to enforce an ordinance, which is discretionary, not the actions that the city employee took after the decision to enforce an ordinance, which would have been operational tasks subject to liability. 468 So. 2d at 956. In *Palmer*, the court held that decisions regarding how to properly fight a fire, how to rescue victims in a fire, or what and how much equipment to send to a fire, were discretionary judgmental decisions. 469 So. 2d at 123. However, the court carefully distinguished those types of discretionary fire-fighting decisions from "negligent conduct resulting in personal injury while fire equipment is being driven to the scene of a fire or personal injury to a spectator from the negligent handling of equipment at the scene," which the court considered to be operational tasks subject to liability. *Id.* Similarly, in this case, the decision to arrest Decedent was a discretionary decision, but the negligent conduct in failing to exercise reasonable care in rescuing Decedent who was in custody, was an operational task subject to a waiver of sovereign immunity.

### iv.   Dismissal Without Prejudice

As a final matter, because Defendant seeks dismissal of Plaintiff's claims with prejudice, *see* ECF No. [8] at 10, the Court considers whether the dismissal of Plaintiff's claims against Defendant should be with or without prejudice. Considering the Parties' arguments, the Court determines that granting Plaintiff another opportunity to plead her claims against Defendant would not be futile. If Plaintiff is able to allege prior incidents to establish Defendant's subjective knowledge of the dangers of its custom and policies and appropriately bring her claim of deliberate indifference under the Fourteenth Amendment and her claim of excessive force under the Fourth Amendment, Plaintiff could satisfy the requirements of *Monell.* Further, Plaintiff could properly allege a negligence claim by clarifying that her negligence claim is based on allegations of Defendant's officers' failure to exercise reasonable care after deciding to arrest Decedent, rather than allegations of negligent training, supervision, and instruction. As such, because this Court is not unsympathetic, Plaintiff may have one opportunity to rectify her pleading.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendant City of Sunrise's Motion to Dismiss, **ECF No. [8]**, is **GRANTED IN PART AND DENIED IN PART**.

2.  Plaintiff's claims against Defendant City of Sunrise are **DISMISSED**.

    a.  Counts I and II are dismissed without prejudice. Plaintiff shall file an amended complaint setting forth Plaintiff's claims of deliberate indifference and excessive force against Defendant in accordance with the Court's Order by no later than **April 14, 2022.**

Case No. 21-cv-62542-BLOOM/Valle

    b.  To the extent that Count III is based on a negligent failure to train, supervise, and instruct, the claim is dismissed with prejudice. To the extent that Count III is based on a negligent failure to exercise reasonable care in effectuating Decedent's arrest, the claim is dismissed without prejudice. Plaintiff shall file an amended complaint setting forth Plaintiff's claim of negligence against Defendant in accordance with the Court's Order by no later than **April 14, 2022.**

3.  Plaintiff's case shall proceed against all remaining Defendants.

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 3, 2022.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

21