# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 21-cv-62542-BLOOM/Valle

TEQUILA WATERS,
*as Personal Representative of*
*the Estate of Damian Martin*
*and Tequila Waters individually*,

      Plaintiff,

v.

CITY OF SUNRISE,
*a municipality of the State of Florida*,
ERIC PLUNSKE, *individually*, *and*
TERRANCE WALKER, *individually*,

      Defendants.

_____/

## <u>ORDER ON MOTION FOR SUMMARY JUDGMENT</u>

**THIS CAUSE** is before the Court upon the Motion for Summary Judgment, ECF No. [43], ("Motion") filed by Defendants the City of Sunrise, Eric Plunske ("Plunske"), and Terrance Walker ("Walker") (collectively "Defendants"). Plaintiff filed a Response, ECF No. [46], ("Response"), to which Defendants filed a Reply, ECF No. [47], ("Reply"). The Court has carefully reviewed the Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted.

## I. BACKGROUND

On March 8, 2021, Plaintiff Tequila Waters, individually and as Personal Representative of the Estate of Damian Martin ("Martin"), filed her Complaint in the Circuit Court of the 17th Judicial Circuit, in and for Broward County, Florida. *See* ECF [1-3] at 56-60. Defendants thereafter

removed the case to this Court, *see* ECF No. [1], and filed a Motion to Dismiss Plaintiff's First Amended Complaint, *see* ECF No. [8]. The Court granted in part and denied in part the Motion to Dismiss. ECF No. [35]. Plaintiff then filed her operative Second Amended Complaint ("Complaint"). ECF No. [36].

The Complaint asserts six counts: that Defendants Plunske and Walker were under a duty to rescue Martin and failed to do so in violation of Martin's Fourteenth Amendment federal civil rights (Count I); Defendant Walker used excessive force in violation of Martin's Fourth Amendment federal civil rights (Count II); Defendants Plunske and Walker did not intervene to prevent the other from violating Martin's Fourth Amendment federal civil rights (Count III); the City of Sunrise had a policy, custom or practice which caused Martin a Constitutional injury in violation of the Fourth and Fourteenth Amendments (Count IV); Defendants Plunske and Walker failed to exercise reasonable care in safeguarding Martin and created a dangerous condition and subjected Martin to the dangerous condition triggering a duty of care which each Defendant wantonly and/or willfully breached in violation of Fla. Stat. § 768.28, Florida's Survival Act, Fla. Stat. § 46.021, and Florida's Wrongful Death Act, Fla. Stat. §§ 768.16, et seq. (Count V); and the City of Sunrise bears legal responsibility for the negligent conduct, acts, and omissions of its employees and is therefore liable for Martin's death under Fla. Stat. § 768.28, Florida's Survival Act, Fla. Stat. § 46.021, and Florida's Wrongful Death Act, Fla. Stat. §§ 768.16, et seq. (Count VI).

On October 26, 2022, Defendants filed the instant Motion in which they argue that summary judgment must be granted. Defendants assert they are entitled to qualified or statutory immunity and the undisputed material facts establish that (1) Defendants never seized Martin, (2) Defendants never used force, much less excessive force against Martin, (3) Defendants did not fail

to intervene to stop excessive force, (4) there is no basis for *Monell* liability, and (5) Defendants did not owe a duty to rescue Martin after he placed himself in danger. ECF No. [43] at 2. Plaintiff filed a Response in which she argues that evidence will show that (1) police officers engaged in a foot chase and deployed a taser near water creating a zone of danger; (2) a genuine issue of material fact exists as to whether Martin was tased and in custody prior to drowning; (3) the City of Sunrise was deliberately indifferent in failing to train officers to effectuate a water rescue; and (4) the deliberate indifference of City of Sunrise employees not intervening after a taser was deployed near a body of water proximately causing Martin's death. ECF No. [46]. Unfortunately, the Response does not include a recitation of the relevant evidence and Plaintiff's counsel failed to respond to or otherwise refute the Statement of Material Facts submitted by Defendants. *Id*. Defendants reply that Plaintiff failed to contravene any material facts and, pursuant to Local Rule 56.1(c), and their Statement of Material Facts should be deemed admitted. ECF No. [47]. Defendants further contend that no credibility issues exist, and sovereign immunity applies. *Id*.

## II.   MATERIAL FACTS

Based on Defendants' uncontested[1] Statement of Material Facts, along with the evidence in the record, the following facts are not in dispute.

On March 8, 2019, Detective Ryan Biro and Detective Paul Hormann advised over the Sunrise Police Department radio of a bailout of five male suspects from a stolen vehicle. ECF No. [44] at ¶¶ 2-5. Sunrise Police Officers Plunske and Walker responded to the radio advisory to assist in the apprehension of the fleeing suspects. *Id*. at ¶ 9. Walker observed a black male, later identified

---

[1] Plaintiff did not respond to Defendants' Statement of Undisputed Material Facts and did not submit her own Statement of Undisputed Material Facts. The Court has reviewed Defendants' Statement of Undisputed Material Facts and finds that it is supported by properly cited record evidence. Accordingly, Defendants' Statement of Undisputed Material Facts is deemed undisputed and otherwise admitted. *See* Local Rule 56.1(c).

as Martin, peeking out from the rear corner of a townhome located at Northwest 57th Terrace and 17th Court in Lauderhill, Florida. *Id*. at ¶ 10. Walker advised over the radio that he had eyes on Martin and proceeded to exit his vehicle to pursue Martin on foot. *Id*. at ¶¶ 11-12. Walker identified himself as a Sunrise Police Officer and instructed Martin to stop running but Martin did not stop, instead running south to the rear of the townhouses in the area. *Id*. at ¶¶ 13-14. Plunske arrived on scene and joined in foot pursuit. *Id*. at ¶15. Plunske and Walker observed Martin at the southernmost unit in the complex located at 1716 Northwest 57th Terrace hiding behind a parked vehicle in front of the residence. *Id*. at ¶¶ 16-17.

Plunske and Walker approached the vehicle from opposite sides. *Id*. at ¶ 18. As they approached, Plunske drew his firearm and ordered Martin to get on his stomach and show his hands while Walker drew his taser and ordered Martin to the ground. *Id*. at ¶¶ 19-20. Martin came out from behind the car with his hands raised, but as officers got close, Martin dropped his hands and ran south. *Id*. at ¶¶ 21-22. Walker shot his taser in Martin's direction but did not make contact and Martin continued running on foot toward the body of water located next to the townhome. *Id*. at ¶¶ 23-24.

At 5:51:29 p.m. Martin reached the rear of the residence and made a running leap to dive into the water. *Id*. at ¶ 29. Martin swam continuously at a decent pace approximately 100 feet toward the center of the canal, until 31 seconds later, halfway across the body of water, Martin stopped swimming and began treading water. *Id*. at ¶¶ 31-32, 39. Plunske and Walker commanded Martin to stop swimming and return to land. *Id*. at ¶ 34. Plunske requested a unit to position itself on the other side of the canal. *Id*. at ¶ 37. At 5:53:09 p.m., one minute and thirty seconds after jumping in the water, Martin began to have difficulty staying above water, and Plunske and Walker observed Martin's head go under the water and pop back up after a few seconds. *Id*. at ¶¶ 43-44.

When Martin resurfaced, he called out for help. *Id*. at ¶ 45. At approximately 5:53 p.m., officers requested Fire Rescue to respond. *Id*. at ¶ 46. Martin's head went under water for a second time at 5:54:05 p.m. *Id*. at ¶ 47. At 5:57 p.m., Plunske was taking off his police gear and shoes when Martin went under the water for a final time and did not resurface. *Id*. at ¶ 51.

After Martin was removed from the water by Fire Rescue Divers, he was pronounced deceased. *Id*. at ¶ 63. An autopsy was performed, and the Medical Examiner concluded Martin was not tased prior to his death and that his death occurred as the result of an accidental drowning. *Id*. at ¶¶ 26, 68. No officer made physical contact with Martin prior to his death. *Id*. at ¶¶ 65-67.

## III.   LEGAL STANDARD

### A.  Summary Judgment

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Further, the Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

### B.  Qualified Immunity

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 (11th Cir. 2004) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)); *see also Storck v. City of Coral Springs*, 354 F.3d 1307, 1313 (11th Cir. 2003). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law," *Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir.

2003) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)), and the doctrine accordingly represents "a balance between the need for a remedy to protect citizens' rights and the need for government officials to perform their duties without the fear of constant, baseless litigation." *Kingsland*, 382 F.3d at 1231 (citation omitted). Accordingly, "[q]ualified immunity is, as the term implies, qualified. It is not absolute." *Id.* at 1233.

"A government official acts within his discretionary authority if his actions were (1) undertaken pursuant to the performance of his duties and (2) within the scope of his authority." *Mikko v. City of Atlanta, Ga.*, 857 F.3d 1136, 1144 (11th Cir. 2017) (citing *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995)). "In applying each prong of this test, [courts] look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). "In other words, 'a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.'" *Mikko*, 857 F.3d at 1144 (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)). "Once the public official has established that he was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to establish that qualified immunity does not apply." *Storck*, 354 F.3d at 1314 (citing *Lee*, 284 F.3d at 1194).

### C. Custodial Arrest

The Supreme Court defines seizure or custodial arrest as follows:

> The word "seizure" readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful. ("She seized the purse-snatcher, but he broke out of her grasp.") It does not remotely apply, however, to the prospect of a policeman yelling "Stop, in the name of the law!" at a fleeing form that continues to flee. That is

no seizure. . . . An arrest requires *either* physical force (as described above) *or,* where that is absent, *submission* to the assertion of authority.

*California v. Hodari D.*, 499 U.S. 621, 626 (1991) (emphasis in original). In *Torres v. Madrid*, the Supreme Court held that "[t]he analysis does not change because the officers used force from a distance to restrain [the arrestee]. The required corporal seising or touching the defendant's body, can be as readily accomplished by a bullet as by the end of a finger." 141 S. Ct. 989, 998 (2021) (citation and internal quotation marks omitted).

## IV.   DISCUSSION

Defendants argue that they are entitled to summary judgment on each count of the Complaint. *See generally* ECF No. [43]. Specifically, Defendants Plunske and Walker argue that summary judgment must be granted on Counts I, II, and III because as officers they are protected by qualified immunity. *Id*. at 2-4. Defendants contend that no force was used on Martin and Martin was never in custody so Counts I-III fail. *Id*. at 4-10. Defendants argue that there is no *Monell* liability, so the City of Sunrise is entitled to summary judgment on Count IV, *Id*. at 10-11, and the wrongful death claims in Counts V and VI fail because no special tort duty ever arose, *Id*. at 11-13. Plaintiff responds that Defendants have not met their burden of proof because of credibility issues and that Plunske and Walker are not entitled to sovereign tort immunity. ECF No. [46].

### A.  Qualified Immunity Counts I-III

Defendants argue that Plunske and Walker are entitled to summary judgment because qualified immunity applies. ECF No. [43] at 2-10. Plaintiff argues that Plunske and Walker are not entitled to sovereign immunity because they forced Martin into a zone of danger when a taser was deployed in close proximity to Martin and a body of water, giving rise to a duty to rescue that both officers breached. ECF No. [46] at 5-6.

Plaintiff does not dispute that Defendants were acting within the scope of their employment when attempting to arrest Martin. Because Defendants have satisfied the discretionary authority requirement, the burden shifts to Plaintiff to establish that qualified immunity is not applicable.

The United States Supreme Court has outlined a two-part test to determine whether a plaintiff meets its burden on rebutting a qualified immunity defense: (1) "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"; and (2) if a constitutional right would have been violated under the plaintiff's version of the facts, the court must then determine "whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Moreover, courts "may consider these two prongs in either order; an official is entitled to qualified immunity if the plaintiff fails to establish either." *Piazza v. Jefferson Cty., Ala.*, 923 F.3d 947, 951 (11th Cir. 2019) (citing *Jacoby v. Baldwin Cty.*, 835 F.3d 1338, 1344 (11th Cir. 2016)).

"[O]nly Supreme Court cases, Eleventh Circuit caselaw, and [Florida] Supreme Court caselaw can 'clearly establish' law in this circuit." *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003) (citing *Hamilton By & Through Hamilton v. Cannon*, 80 F.3d 1525, 1532 n.1 (11th Cir. 1996)). The essence of this inquiry is the "public official's objective reasonableness, regardless of his underlying intent or motivation." *Kingsland*, 382 F.3d at 1231-32 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982); *Lee*, 284 F.3d at 1195). "To be clearly established, the contours of an asserted constitutional right 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Jones v. Cannon*, 174 F.3d 1271, 1282 (11th Cir. 1999) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "[I]n the light of pre-existing law, the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640. "Qualified immunity 'gives ample room for mistaken judgments' but does not protect 'the plainly

incompetent or those who knowingly violate the law.'" *Kingsland*, 382 F.3d at 1231-32 (quoting

*Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

Nonetheless, "[t]he Supreme Court and [the Eleventh Circuit] have stated that a plaintiff

cannot strip a § 1983 defendant of his qualified immunity by citing to general rules or abstract

rights." *Jones*, 174 F.3d at 1282 (citing *Anderson*, 483 U.S. at 639); *see Walker v. Schwalbe*, 112

F.3d 1127, 1132 (11th Cir. 1997) ("Plaintiffs may not discharge their burden [of showing that a

right is clearly established] by referring to general rules and abstract rights."). "Qualified immunity

focuses on the actual, specific details of concrete cases." *Walker*, 112 F.3d at 1132.

Additionally, "[b]ecause § 1983 'requires proof of an affirmative causal connection

between the official's acts or omissions and the alleged constitutional deprivation,' each defendant

is entitled to an independent qualified-immunity analysis as it relates to his or her actions and

omissions." *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018) (quoting *Zatler v. Wainwright*,

802 F.2d 397, 401 (11th Cir. 1986) (per curiam)). Thus, in conducting a § 1983 analysis, courts

must "evaluate a given defendant's qualified-immunity claim, considering only the actions and

omissions in which that particular defendant engaged." *Id.* Accordingly, the Court addresses each

officer's claim for qualified immunity under each Count of the Complaint.

### i.   Count I - Fourteenth Amendment (State Created Danger)

Defendants claim Walker and Plunske were under no affirmative duty to rescue Martin

from the water. ECF No. [43] at 4-6. Plaintiff responds that the officers breached the duty to rescue

which arose when they put Martin in a zone of danger. ECF No. [46] at 5-6.

There is no common law duty to rescue a stranger. *See Est. of Ferguson v. Mascara*, No.

09-14192-CIV, 2010 WL 11558195, at *2 (S.D. Fla. Sept. 7, 2010), *on reconsideration*, No. 09-

14192-CIV, 2011 WL 13225161 (S.D. Fla. Jan. 19, 2011) (citing *Bradberry v. Pinellas County*,

789 F.2d 1513, 1516 (11th Cir. 1986)). Further, "[t]here is no general duty to rescue a stranger in distress . . . . And the fact that the defendant is a public officer adds nothing. A mere failure to rescue is not tortious just because the defendant is a public officer whose official duties include aiding people in distress." *Hamilton v. Cannon*, 80 F.3d 1525, 1529 n.4 (11th Cir. 1996) (citations and internal quotation marks omitted). There are exceptions to this rule, where the individual needing rescue is in custody or where the state created the dangerous situation. *See Est. of Ferguson*, 2010 WL 11558195, at *3 (citing *Willis v. Charter Township of Emmett*, 360 F. App'x. 596, 599 (6th Cir. 2010)). "Under the custody exception, if the state has restrained the ability of an individual to act on his own behalf, then the state would have a corresponding duty to assume responsibility for that individual's well being. Under the state created danger exception, if the state placed the individual in danger, in a manner that shocks the conscience then the duty to rescue might be triggered." *Id.* (citation and internal quotation marks omitted).

### a. In Custody

Both parties agree that if Martin was tased, then he was in custody for purposes of the above analysis. Defendants contend that the record evidence demonstrates that Walker attempted to tase Martin but was unsuccessful. ECF No. [44] at ¶ 24.

In support of the argument that Martin was not tased, Defendants submitted the Declarations of Plunske and Walker who both state that the prongs from the taser did not strike Martin. ECF Nos. [44-1] at ¶ 24, [44-2] at ¶ 19. Although Plaintiff submits that those Declarations may be biased, *see* ECF No. [46] at 4, the Declarations are corroborated by additional evidence furnished by Defendants. Defendants also submitted the Broward County Medical Examiner's Report which includes the Medical Examiner's opinion that there was "no evidence of the taser striking the decedent," ECF No. [44-8] at 6, and the Sheriff's Office Investigative Action Report

which indicates that there was no DNA present on the taser probe recovered from the scene and no indication of carbon build up which would indicate a good connection from the taser to a conductive material, ECF No. [44-9] at 19-21.

As previously noted, Plaintiff's counsel failed to file a response to Defendants' Statement of Undisputed Facts. Nevertheless, the Court considers whether any record evidence supports Plaintiff's argument that there remains a genuine issue of material fact as to whether a taser prong made contact with Martin's body. *See* ECF No. [46] at 4. Plaintiff submitted an email exchange between an officer investigating the circumstances of Martin's death and a compliance manager for the manufacturer of the taser Walker used. *See* ECF No. [46-1]. That email states in relevant part,

> This indicates there was a probe miss at first, then a ***possible*** arcing connection. … There is only one guarantee, the first 1.8 seconds show a complete miss and no discharge from the CEW. After that, we don't know what the CEW discharged to, but we do know it was a very high impedance (due to the high voltage and low charge values). Even if it were conducting to the subject, I would not expect full effective NMI, even if there were sufficient probe spread. If it was conducting to somethings else (i.e. – through the water, probe to probe, wire to probe, etc.), the subject would not have been affected by the deployment at all.

*Id*. (emphasis in original).

Plaintiff contends that since only one probe was found at the scene an issue of material fact exists as to whether the other taser prong made contact with Martin. ECF No. [46] at 4. Unfortunately, Plaintiff's counsel has provided no evidence that the prong actually made contact with Martin and mere speculation is not sufficient to create a dispute as to a material fact. *See Valderrama v. Rousseau*, 780 F.3d 1108, 1112 (11th Cir. 2015) ("Conclusory allegations and speculation are insufficient to create a genuine issue of material fact."). Plaintiff also argues that Defendants failed to submit any expert report or affidavit to definitively answer whether a taser prong connected with Martin prior to him entering the water. However, Plaintiff's counsel did not

submit any authority, nor is the Court aware of any such authority, that specifically requires expert testimony in this situation.

Construing the evidence in the light most favorable to Plaintiff as the non-moving party, the Court is confined by the undisputed facts that the taser probe never actually struck Martin and no officer every actually made contact with Martin prior to his death. As a result, the Court finds, as a matter of law, that Martin was never in police custody.

### b. Special Danger

The remaining question is whether the "special danger" theory of liability applies. Defendants argue that the Eleventh Circuit has consistently rejected the special danger theory of liability. ECF No. [43] at 5 (citing *Waddell v. Hendry Cnty. Sheriff's Office*, 329 F.3d 1300, 1305 (11th Cir. 2003). In *Waddell*, the Eleventh Circuit explained that although it had previously "concluded that state and local government entities could be liable for substantive due process violations for their failure to protect victims from harm caused by third parties where the state, through its affirmative acts, put the victim in special danger of harm…the special relationship and special danger doctrines were superseded." *Waddell*, at 1305 (internal quotation marks and citations omitted). The current and applicable standard is that "conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Id*. The Eleventh Circuit concluded that, "a showing of negligence is insufficient to make out a constitutional due process claim."

Plaintiff argues that Plunske and Walker recklessly failed to rescue Martin the second he entered the water after chasing him for a non-violent crime and tasing him near the waterway. ECF No. [36] at ¶¶ 87-89. Defendants reply that Defendants never placed Martin in a zone of danger.

ECF No. [47] at 6, citing *Seguine v. City of Miami*, 627 So.2d 14 (Fla. 3d DCA 1993). Both Plaintiff and Defendants cite to *Seguine* which analyzed the special danger theory of liability.

The Florida Supreme Court, in *Kaisner v. Kolb*, determined that there is no liability as a matter of law against a government entity if no special tort duty of care exists or the doctrine of governmental immunity bars the claim under the discretionary function exception. 543 So.2d 732, 734 (Fla. 1989). The Court articulated that a special tort duty of care is owed by police officers when an officer takes someone into custody, otherwise detains them, deprives them of liberty, or places them in danger. *Id*.

In *Seguine,* the Third District Court of Appeals considered whether police officers owed a duty of care to a decedent after officers drew their guns and ordered the decedent to stop in an effort to arrest him. *Seguine*, 627 So.2d at 15-16. There, the decedent did not comply with the officers' orders and dove into an adjacent canal and subsequently drowned. *Id*. The Court considered the standard articulated in *Kaisner* that a duty arises where "affirmatively negligent acts by police [] place a person in a zone of danger when such person is in the physical custody of the police following a temporary detention or arrest." *Id*. at 18. The Court found that because the decedent was not in custody, the police order to stop did not place the decedent in a zone of danger. *Id*. at 18. The Court determined that it was the decedent who placed himself in a zone of danger by disobeying the police, such that no special tort duty arose. *Id.* Similarly here, the undisputed material facts demonstrate that Martin was not in police custody, and he jumped into the water against police orders. As such, a duty to rescue never arose.

The controlling law requires that the Court grant summary judgment as to Count I. Plaintiff was not legally owed a duty to be rescued under the circumstances and Plunske and Walker therefore did not violate Plaintiff's Fourteenth Amendment federal civil rights. Plaintiff assert that

Plunske and Walker failed to act to save Martin in violation of Martin's rights, but because the Court has concluded that Martin's rights were not violated based on the undisputed record evidence, the Court also concludes that each is entitled to qualified immunity on Count I.

### ii.      Count II - Fourth Amendment (Excessive Force)

Defendants argue that Walker is entitled to summary judgment on Count II because the record is devoid of any evidence establishing that Walker used any force, let alone excessive force, against Martin. ECF No. [43] at 8. Defendants contend that Walker's attempt to tase Martin was not excessive as a matter of law. *Id.* at 9. Plaintiff's counsel failed to address this argument in Plaintiff's Response. *See* ECF No. [46].

"Fourth Amendment analysis of intentional physical control by police officers in § 1983 cases alleging excessive force, '[a]s in other Fourth Amendment contexts,' is subject to an objective reasonableness inquiry: 'the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Carr v. Tatangelo*, 338 F.3d 1259, 1267 (11th Cir. 2003) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)); see also *Vinyard v. Wilson*, 311 F.3d at 1347 (same). "Th[e Eleventh C]ircuit has made clear that some use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense. Because a police officer is entitled to use some force to arrest a suspect, the application of *de minimis* force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Myers v. Bowman*, 713 F.3d 1319, 1327 (11th Cir. 2013) (quoting *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000)). Determining whether an officer's use of force was appropriate "is a necessarily fact-intensive inquiry that requires us to consider (1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety

of the officers or others,' and (3) 'whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Stryker v. City of Homewood*, 978 F.3d 769, 773 (11th Cir. 2020) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Here, the undisputed material facts establish that Walker reasonably suspected that Martin fled from a stolen vehicle, Martin was not known to pose any immediate threat to the safety of the officers or others, and Martin was actively attempting to evade arrest by flight. *See* ECF No. [44] at ¶¶ 4-5, 11-14, 19-22.

The Eleventh Circuit has upheld the use of a taser gun to effectuate an arrest during a traffic stop where the suspect was hostile, belligerent, and uncooperative. *See Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004). There, the Court found that a single use of the taser gun "was reasonably proportionate to the need for force and did not inflict any serious injury." *Id*. Since then, the Eleventh Circuit has explicitly held "that employing a taser on a compliant, nonthreatening suspect violates the Constitution." Stryker, at 775. Here, the facts indicate a situation where Martin was nonthreatening but was not compliant.

The undisputed evidence demonstrates that Walker had reasonable suspicion to believe Martin had committed a crime involving a stolen vehicle based on the radio transmission, that Walker identified himself to Martin as a police officer, and that Martin fled. *See* ECF No. [44] at ¶¶ 6-7, 10-14. The record reveals that Walker pursued Martin and that when Martin was hiding behind a car in a residential driveway, Walker instructed Martin to get to the ground but instead Martin emerged with his hands raised, advanced past Walker, put his hands down and ran, at which point Walker attempted to tase Martin unsuccessfully and Martin continued to flee. *Id*. at 19, 21-24, 29. Where a suspect attempts to flee or is otherwise non-compliant, the Eleventh Circuit has upheld the use of tasers in multiple situations. *See Moore v. Gwinnett Cnty.*, 805 F. App'x 802,

809 (11th Cir. 2020) (finding "a single taser shock in this situation was not disproportionate to the need for force" where a suspect failed to comply with multiple commands to place her hands behind her back and submit to arrest); *Barfield v. Rambosk*, 641 F. App'x 845, 848 (11th Cir. 2015) (finding that an officer's use of a taser to control and handcuff a suspect where the suspect appeared to be under the influence of alcohol or a controlled substance and was actively resisting efforts to handcuff him did not amount to excessive force); *Anthony v. Coffee Cnty.*, 579 F. App'x 760, 766 (11th Cir. 2014) (finding that the use of a taser was not an unreasonable split-second decision because although the arrestee was not belligerent, he was uncooperative and refused an officer's order); *Mann v. Taser Intern., Inc.*, 588 F.3d 1291 (11th Cir. 2009) (finding the use of a taser three times on a handcuffed arrestee was not excessive force under the circumstances because the arrestee refused verbal commands and flailed uncontrollably).

The undisputed facts establish that Martin refused to obey Walker's initial orders to stop or Walker's order to get to the ground, and instead attempted to flee. Walker's attempted single use of a taser was not an excessive use of force. The record evidence supports the Court's finding that deploying the taser was reasonable under the circumstances. As such, Walker is entitled to qualified immunity and the Court grants summary judgment in favor of Walker on Count II.

### iii.    Count III - Fourth Amendment (Duty to Intervene)

Defendants argue that they are entitled to summary judgment on Plaintiff's failure to intervene claim. ECF No. [43] at 9. Plaintiff's Response does not address this argument. *See* ECF No. [46]. The Court has considered Defendants' argument and agrees with Defendants.

"[A] claim for failure to intervene requires an act of excessive force by the perpetrating officer in the first instance, which, as discussed above, did not happen here." *Ireland v. Prummell*, 53 F.4th 1274, 1301 (11th Cir. 2022). "[W]hen an officer is not a participant in the excessive force,

he can still be liable if he fails to take reasonable steps to protect the victim." *Ledlow v. Givens*, 500 F. App'x 910, 914 (11th Cir. 2012) (per curiam) (citing *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002)). However, the non-intervening officer must be in a position where intervention is possible. *See Hadley v. Gutierrez*, 526 F.3d 1324, 1330-31 (11th Cir. 2008); *Johnson v. White,* 725 F. App'x 868, 878 (11th Cir. 2018) (per curiam).

Plaintiff alleges that both Plunske and Walker had a duty to intervene to prevent the other from engaging in unlawful conduct. *See* ECF No. [36] at ¶¶ 105-110. The Court determines that (1) a duty to rescue never arose so neither officer was expected to intervene to save Martin after he jumped in the water; and (2) Walker did not use excessive force when he deployed the taser, so Martin's Fourth Amendment federal civil rights were not violated. Since the use of force against Martin was not unreasonable in the first instance, Plunske cannot be liable for failing to intervene to stop the attempted use of reasonable force. The Court therefore finds that Plunske and Walker are entitled to qualified immunity and grants summary judgment in favor of Defendants on Count III.

### B.  Count IV Fourth and Fourteenth Amendment (*Monell*)

Defendants argue that the City of Sunrise is entitled to summary judgment on Count IV because even if Plaintiff could prove a constitutional violation, and she has not, the City can only be liable when execution of its policy or custom inflicts the injury of which Plaintiff complains. ECF No. [43] at 17. Plaintiff's counsel did not address Defendants' argument in Plaintiff's Response. *See* ECF No. [46].

The Eleventh Circuit has stated that to establish a governmental entity's § 1983 liability, a plaintiff must allege facts establishing an unconstitutional practice "so permanent and well settled as to constitute a custom or usage with the force of law." *Brown v. City of Fort Lauderdale*, 923

F.2d 1474, 1481 (11th Cir. 1991) (citation and internal quotation marks omitted). Further, the allegations must reflect a practice so "longstanding and widespread," that it can be "deemed authorized by the policy-making officials because they must have known about it but failed to stop it." *Id*.

Defendant argues that "the record is devoid of any evidence establishing a long-standing City custom or policy of committing either due process violations under the Fourteenth Amendment or excessive force under the Fourth Amendment such as to expose the City to § 1983 liability." ECF No. [43] at 11. Defendants contend that Plaintiff has not proffered any evidence establishing a widespread unconstitutional practice under the Fourteenth or Fourth Amendment that would expose the City of Sunrise to § 1983 liability. *Id*.

The record evidence is devoid of any facts establishing that the City of Sunrise knew of a risk of harm and failed to stop it. Specifically, the Complaint alleges that similar prior incidents involving the City of Sunrise's officers put the City of Sunrise on notice that its police officers make unreasonable decisions in foot pursuits that needlessly result in persons being physically injured or killed, that its officers engage in practices that cause dangerous medical conditions, and that it failed to adopt, implement, and maintain policies and provide training necessary for police officers using a taser or performing a water rescue if necessary. ECF No. [36] at ¶¶ 75(a)-(m). No evidence has been proffered to support any of those allegations. As such, there is no dispute of any material fact regarding Plaintiff's claims against the City of Sunrise for violating Martin's Fourth and Fourteenth Amendment rights and summary judgment must be granted on Count IV in favor of the City of Sunrise.

### C. Count V – Negligence Causing Injury and/or Death as to Plunske and Walker (Pursuant to Fla. Stat. § 768.28; Florida's Survival Act, Fla. Stat. § 46.021[2]; and Florida's Wrongful Death Act, Fla. Stat. §§ 768.16, et seq.)

#### i.  Tort Liability

As an initial matter, Defendants argue that Plaintiff's wrongful death and negligence causing injury and/or death claim fails because Walker's order to stop and attempted arrest of Martin did not place Martin in danger. ECF No. [43] at 11-13. Defendants argue Martin placed himself in a zone of danger when he disobeyed police orders to stop and jumped into the water. *Id*. at 13. Therefore, Defendants assert that no special tort duty ever arose because Martin was never in police custody and never affirmatively placed in a zone of danger by the police. *Id*. at 13. Plaintiff's Response does not address this argument except to the extent it includes the previously addressed argument that Martin was struck by the taser. *See* ECF No. [46].

Under Florida law, a wrongful death claim arises "[w]hen the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person...." Fla. Stat. § 768.19. Here, Plaintiff alleges that the wrongful and negligent acts of excessive force and failure to rescue were the cause of Martin's death. *See* ECF No. [36].

The Court analyzed Plaintiff's claims regarding the alleged wrongful and negligent conduct of Officers Plunske and Walker as they were alleged in Counts I-III. The Court determined that no special duty to rescue ever arose because the undisputed material facts establish that Martin was never in police custody and Officers Plunske and Walker did not put Martin into a zone of danger. *See supra* at III(A)(i)*.* The Court also determined that Walker's attempted use of the taser did not

---

[2] Florida's Survival Act provides that "No cause of action dies with the person. All causes of action survive and may be commenced, prosecuted, and defended in the name of the person prescribed by law." Fla. Stat. § 46.021. Defendants do not dispute in their Motion that Plaintiff is the proper person to bring these claims on behalf of Martin. The Court therefore considers it undisputed that Plaintiff has the necessary standing.

constitute excessive force under the circumstances because Walker had probable cause to arrest Martin and Martin disobeyed multiple police orders and attempted to flee to evade arrest. *See supra* at III(A)(ii). Finally, the Court determined that neither officer could be held liable for failing to intervene because the record evidence demonstrates that a duty to intervene never arose under the circumstances. *See supra* at III(A)(iii).

Because the Court has determined that as a matter of law Plunske and Walker did not commit a wrongful act or omission or breach a duty owed to Martin, it finds that Plaintiff's claim under Florida's Wrongful Death Act is defeated.

### ii.  Statutory Immunity

Nevertheless, the Court evaluates Defendants' assertion that Plunske and Walker are entitled to statutory immunity as to Count V under Florida law. Defendants argue that Plunske and Walker are entitled to statutory immunity because they were acting within the scope of their employment as police officers and did not act in bad faith toward Martin. ECF No. [43] at 13-14. Plaintiff responds that under Florida Statute § 768.28 sovereign immunity is waived on a broad basis and the exceptions to the waiver of immunity doctrine do not apply. ECF No. [46] at 5-6.

The statute reads, in relevant part:

> An officer, employee, or agent of the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28.

"The question of whether an act was committed with malicious purpose, bad faith, or with wanton and willful disregard is not a question that must be submitted to a jury, but rather, can be decided by the Court depending on the facts." *Blue v. Miami-Dade Cnty.*, 10-23599-CIV, 2011

WL 2447699, at *2 (S.D. Fla. June 15, 2011) (citing *Prieto v. Malgor*, 361 F.3d 1313, 1320 (11th Cir.2004)). "The first two exceptions, 'in bad faith' and 'with malicious purpose,' are 'synonymous with each other under Florida law.' … Another way to put it is that Florida courts have equated bad faith with 'the actual malice standard.'" *Coleman v. Hillsborough Cnty.,* 41 F.4th 1319, 1325 (11th Cir. 2022) (citing *Peterson v. Pollack*, 290 So. 3d 102, 109, 111 (Fla. 4th DCA 2020)). "An officer acts maliciously when he acts with 'the subjective intent to do wrong.'" *Baxter v. Roberts*, 54 F.4th 1241, 1271 (11th Cir. 2022) (quoting *Peterson*, 290 So. 3d at 109). Wanton and willful disregard of human rights or safety "is conduct worse than gross negligence" or "conduct much more reprehensible and unacceptable than mere intentional conduct." *Coleman*, at 1325 (citing *Peterson*, 290 So. 3d at 109).

Defendants argue that Plunske and Walker are entitled to statutory immunity on Count V because the record establishes that the officers did not act in a willful and wanton manner or in bad faith. ECF No. [43] at 15. Plaintiff responds that § 768.28 expressly waives sovereign tort immunity when death or personal injury results from wrongful conduct of an employee of a Florida municipality. ECF No. [46] at 4.

Here, there is no dispute that Plunske and Walker were acting withing the scope of their employment. That leaves only the question of whether they acted in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights or safety. *See* Fla. Stat. §768.28(9)(a). Plaintiff argues that Martin was forced into a zone of danger wherein a taser was deployed in close proximity to Martin and a body of water, giving rise to a duty for Plunske and Walker to rescue Martin. *Id.* at 6.

Defendants provided the deposition transcripts of two eyewitnesses who reside in the house next to where Martin jumped into the water. *See* ECF Nos. [44-5], [44-7]. Both eyewitnesses

testified that when Martin was in the water, the officers appeared concerned for Martin's safety.

*See* ECF Nos. [44-7] at 9:14-16, 14:9-10, [44-5] at 9:23-25.

> The first witness testified as follows:

> Q.      Do you have any reason to believe that these officers wanted to hurt this boy?
> …
> THE WITNESS:        It looked to me like they were trying to help him get out of the water.

ECF No. [44-5] at 11:19-24 (objection to form omitted). The other eyewitness testified similarly,

as excerpted here,

> Q:      Did you believe the officers were concerned for the boy's safety?
> A:      Yes, I do.
> Q:      And were they trying to do things to help him?
> …
> THE WITNESS:        I assume.
> …
> Q:      You assume?
> A:      Yeah. I mean, from my observation, yes, they were doing – making an attempt to rescue him.
> Q:      Throwing things out to try and rescue him?
> A:      Yes. Yes.

ECF No. [44-7] at 9:23-10:10 (objection to form omitted).

> In Plunske's Declaration he states, "At 5:57 pm, while taking off my duty belt, my vest, my shoes, Martin went under the water and did not resurface." ECF No. [44-2] at ¶32. His Declaration continues,

> Martin was approximately 100 feet away from the bank, the water was murky, and I was unable to determine exactly where Martin was submerged. I was not able to safely enter the water without jeopardizing my life and other officers before Martin drowned. Everything happened very quickly. Officers along the banks attempted to throw multiple rescue devices to aid Martin. However, the length of the rescue devices could not reach the middle of the body of water.

*Id*. at ¶¶33-36.

Moreover, in his Declaration, Walker explained, "I did not believe that either Officer Plunske or I could enter the water safely in an attempt to rescue Martin. We did not have the necessary rescue equipment and we are not trained as rescue drivers [sic]." ECF No. [44-1] at ¶49.

The undisputed record evidence demonstrates that the officers acted to try to rescue Martin. There is no record evidence to suggest that Plunske or Walker acted in bad faith, with malicious purpose, or with willful disregard of human rights or safety. As such, even assuming a tort was committed, the undisputed facts do not establish that the Defendant officers acted in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights or safety. *See* Fla. Stat. §768.28(9)(a). The Court therefore concludes that Plunske and Walker are entitled to statutory immunity on Count V.

### D.  Count VI –Negligence Causing Injury and/or Death as to the City of Sunrise (Pursuant to Fla. Stat. § 768.28; Florida's Survival Act, Fla. Stat. § 46.021; and Florida's Wrongful Death Act, Fla. Stat. §§ 768.16, et seq.)

Defendants do not claim that the City of Sunrise is entitled to sovereign immunity. However, they argue that the City of Sunrise is entitled to summary judgment on Plaintiff's wrongful death and negligence causing injury and/or death claims because the City of Sunrise did not owe a duty of care to rescue Martin after he jumped in a canal while fleeing arrest. ECF No. [43] at 11.

As discussed above, under Florida law, a wrongful death claim arises "[w]hen the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person...." Fla. Stat. § 768.19.

The Court has already determined that there is no *Monell* liability as there is no record evidence establishing that the City of Sunrise had a custom or policy of committing due process violations under the Fourteenth Amendment or excessive force under the Fourth Amendment that

would give rise to liability. *See supra* III(B). The Court additionally found that City of Sunrise police officers Plunske and Walker did not negligently cause Martin's death. As such, no tort was committed and the City of Sunrise cannot be held liable under Florida's immunity scheme which only renders the City of Sunrise liable for a tort committed by its employee and committed without bad faith, malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights or safety. *See* Fla. Stat. §768.28(9)(a). Because there is no record evidence to establish that the City of Sunrise can be found liable for Martin's death under any theory proffered by Plaintiff, it must grant summary judgment in favor of the City of Sunrise on Count VI.

V.     **CONCLUSION**

While the Court is sympathetic to the tragic circumstances and resulting death of Mr. Martin, it is constrained by the undisputed facts and the application of controlling law.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.   Defendants' Motion for Summary Judgment, **ECF No. [43]**, is **GRANTED**.

2.   A final judgment will be entered by separate order.

**DONE AND ORDERED** in Chambers at Miami, Florida, on January 5, 2023.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record